**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2333-24

IN THE MATTERS OF S.J.,
BOONTON.

_____

Argued May 27, 2026 – Decided July 1, 2026

Before Judges Gilson, Firko and Vinci.

On appeal from the New Jersey Civil Service Commission, Docket Nos. 2025-0910 and 2025-1080.

Anthony G. LoBrace argued the cause for appellant Town of Boonton (Cleary Giacobbe Alfieri & Jacobs LLC, attorneys; Adam S. Abramson-Schneider, of counsel; Anthony G. LoBrace, on the briefs).

Matthew A. Peluso argued the cause for respondent S.J.

Jennifer Davenport, Attorney General, attorney for respondent Civil Service Commission (Andrew K. Hedin, Deputy Attorney General, on the statement in lieu of brief).

PER CURIAM

The Town of Boonton (Boonton) appeals from an October 16, 2024 decision by the Civil Service Commission (Commission) granting interim relief

to S.J., a captain in the Boonton Police Department. The Commission ordered that Boonton pay S.J., a civil service employee, back pay from June 3, 2024, until he is either reinstated, or in the alternative, until Boonton re-issues the charges set forth in the October 18, 2022 preliminary notice of disciplinary action (PNDA), or brings new administrative charges against S.J. Boonton also appeals from the Commission's March 19, 2025 decision denying its application for reconsideration. Because the Commission's decisions were not arbitrary, capricious, or unreasonable, and its factual findings were supported by substantial credible evidence in the record, we affirm.

I.

We derive the relevant facts from the record. On April 18, 2022, Officer J.W. filed a complaint with the Morris County Prosecutor's Office (MCPO) against S.J. alleging he directed J.W. to take a sick day on March 25, 2022, so S.J. could work and be paid overtime. An investigation revealed that S.J. also directed two other officers to take sick days on March 25, and 28, 2022, so he could work and receive overtime pay.

On October 18, 2022, Boonton issued S.J. a PNDA and suspended him with pay pending a hearing for the conduct alleged in J.W.'s complaint. Specifically, Boonton charged S.J. with insubordination, conduct unbecoming

of a public employee, neglect of duty, other sufficient cause under N.J.S.A. 4A:2-2.3(a)(2), (6), (7), and (12), and misconduct in violation of N.J.S.A. 40A:14-147. Boonton also charged S.J. with violating multiple Boonton Police Department Rules and Regulations, duty assignment, and overtime procedures. On October 19, 2022, S.J.'s counsel requested a hearing to address the October 18, 2022 PNDA charges.

After the October 18, 2022 PNDA was issued, S.J. removed his personnel and internal affairs files, confidential records, and computers from police headquarters before he was suspended and banned from headquarters. As a result of his conduct, S.J. was criminally charged on February 8, 2023, with computer criminal activity, N.J.S.A. 2C:20-25(e); theft by unlawful taking or disposition, N.J.S.A. 2C:20-3(a); tampering with public records or information, N.J.S.A. 2C:28-7(a)(3); and falsifying or tampering with records, N.J.S.A. 2C:21-4(a). Notably, the criminal charges were brought against S.J. prior to the hearing on the October 18, 2022 PNDA.

On February 10, 2023, Boonton issued S.J. a second PNDA and modified his suspension to an indefinite suspension without pay, pending disposition of the criminal charges, and the newly filed charges. S.J. did not request a hearing regarding the February 10, 2023 PNDA. On February 21, 2023, Boonton issued

S.J. another PNDA imposing an indefinite suspension without pay, pending disposition of the criminal charges.

On May 21, 2024, the Police Training Commission (PTC) suspended S.J.'s law enforcement license pursuant to the Police Training Act (Act), N.J.S.A. 52:17B-66 to -77.19, and N.J.A.C. 13:1-16.2, based on the pending criminal charges. The PTC determined S.J. was "unfit for duty, is a risk or danger to any person or the public if permitted to remain licensed, and/or that an immediate suspension [was] necessary to maintain public safety, health, order or effective provision of law enforcement services."

On May 30, 2024, the Law Division dismissed the criminal charges without prejudice and expunged "all records and information related to [S.J.'s] arrest," pursuant to N.J.S.A. 2C:52-6. Four days later, on June 3, 2024, Boonton received notice that the criminal complaint against S.J. had been dismissed. As a result of the dismissal of the criminal charges, S.J. requested to return to employment with Boonton, which it denied.

On June 5, 2024, the Attorney General's Office of Public Integrity and Accountability (OPIA) indicated that it intended to proceed with criminal charges against S.J. In response, Boonton notified S.J. that he would remain suspended without pay pending additional criminal charges contemplated by the

OPIA. Further, Boonton noted that S.J. could not return to work because he no longer possessed his law enforcement license.

On June 21, 2024, S.J. appealed to the Commission requesting interim relief from his continued suspension without pay, reinstatement of his PTC license, return to employment, and back pay on the basis that the criminal charges were dismissed and no new charges had been filed. S.J. also argued that he was not afforded a hearing in connection with the October 18, 2022 PNDA. Boonton countered that the suspension without pay was proper because the OPIA indicated it would file new criminal charges against S.J., and if not, Boonton would proceed with an additional PNDA against S.J., which would subject him to an unpaid suspension. Boonton pointed out that S.J.'s PTC license was suspended, and therefore, he could not be reinstated or qualify for back pay.

On October 16, 2024, the Commission granted S.J.'s request for interim relief in part and awarded him back pay from June 3, 2024 onward until Boonton either: (1) issued a new PNDA providing for S.J.'s immediate suspension without pay and setting forth the remaining administrative charges; (2) converted the October 18, 2022 PNDA suspension with pay to a suspension without pay; or (3) reinstated S.J. to his former position. The Commission emphasized Boonton's inaction and undue delay in continuing to process the

disciplinary charges against S.J. in support of its interim decision. Citing N.J.A.C. 4A:2-2.7(a)(2) and N.J.A.C. 4A:2-2.7(b)(1), the Commission determined Boonton could not continue to indefinitely suspend S.J. without pay once the criminal charges were dismissed. The Commission held that Boonton was not required to reinstate S.J.'s employment and did not rule on the merits of the October 18, 2022 PNDA, potential administrative charges against him, or S.J.'s appeal seeking to be returned to employment and be paid lost wages from February 2023 onward.

On December 27, 2024, Boonton moved for reconsideration of the Commission's decision pursuant to N.J.A.C. 4A:2-1.6(b), and S.J. cross-moved for enforcement of the back pay award. In support of its request for reconsideration, Boonton reiterated S.J.'s police license had been suspended, and argued the statute precluded any entitlement to compensation during the period of such suspension. Boonton also contended there was no undue delay in processing or prosecuting S.J.'s disciplinary charges because it was impossible for Boonton to proceed until the OPIA and MCPO had completed their reviews and returned the matter to Boonton for disposition. Boonton asserted that the OPIA and MCPO also had to provide all documents and

information in their possession that would be necessary for any further proceedings.

On January 3, 2025, the OPIA informed Boonton that it had concluded its review and was not pursuing criminal prosecution against S.J. On January 13, 2025, the PTC reinstated S.J.'s police license that had been suspended on the basis the pending criminal charges were resolved. Boonton did not return S.J. to work, issue a "new" PNDA relative to the October 18, 2022 PNDA charges, or pay him back wages. On January 21, 2025, Boonton served a notice of an internal affairs complaint on S.J. regarding the allegations underlying the dismissed criminal charges that had been brought against him.

On March 19, 2025, the Commission denied Boonton's request for reconsideration and partially granted S.J.'s cross-motion for enforcement related to his back pay from the dismissal of his criminal charges. Once again, the Commission declined to order S.J.'s return to active employment or order back pay dating to the issuance of the PNDA on February 10, 2023.

The Commission stated it was not addressing the merits of S.J.'s grievance, but rather the "undue delay" caused by Boonton leaving him in "limbo" regarding the October 18, 2022 PNDA after it was notified that the criminal charges against him were dismissed. The Commission was

7

unpersuaded by Boonton's contention that suspension of S.J.'s law enforcement license precluded an award of back pay. The Commission determined that Boonton's inaction since June 3, 2024, when it was notified of the dismissal of S.J.'s criminal charges, was improper.

The Commission reasoned Boonton should have converted the October 18, 2022 PNDA into a suspension without pay or issued a new suspension setting forth S.J.'s remaining administrative charges. The Commission reiterated S.J. was entitled to back pay from June 3, 2024, until Boonton either: (1) converted the October 18, 2022 PNDA into a suspension without pay; (2) issued a new PNDA suspending S.J. without pay; or (3) reinstated S.J. to employment.

On April 17, 2025, Boonton moved before the Commission to stay its award of interim relief. The Commission denied the application for a stay on September 10, 2025. On October 23, 2025, Boonton moved before this court for a stay, which we granted. This appeal followed.

Before us, Boonton raises two arguments: (1) the Commission's back pay award is contrary to established law; and (2) the Commission's back pay award was not based upon, and was contrary to, substantial credible evidence of record.

8

II.

Our review of an agency determination is limited.  Allstars Auto Grp., Inc. v. N.J. Motor Vehicle Comm'n, 234 N.J. 150, 157 (2018).  An agency's determination "is entitled to affirmance so long as the determination is not arbitrary, capricious, or unreasonable, which includes examination into whether the decision lacks sufficient support in the record or involves an erroneous interpretation of law."  Melnyk v. Bd. of Educ. of the Delsea Reg'l High Sch. Dist., 241 N.J. 31, 40 (2020).  The party challenging the administrative action bears the burden of making that showing.  Lavezzi v. State, 219 N.J. 163, 171 (2014).  We reverse an agency's factual findings only if "clearly . . . mistaken . . . and so plainly unwarranted that the interests of justice demand intervention and correction."  Campbell v. N.J. Racing Comm'n, 169 N.J. 579, 587-88 (2001) (quoting Clowes v. Terminix Int'l, Inc., 109 N.J. 575, 588 (1988)).

We defer to an agency's "[r]easonable credibility determinations."  In re Pontoriero, 439 N.J. Super. 24, 35 (App. Div. 2015).  We are not bound by an agency's statutory interpretations or other legal decisions.  Melnyk, 241 N.J. at 40.  However, "[w]hen resolution of a legal question turns on factual issues within the special province of an administrative agency, those mixed questions

of law and fact are to be resolved based on the agency's fact finding." Campbell, 169 N.J. at 588.

To determine whether an agency's determination is arbitrary, capricious, or unreasonable, a reviewing court is generally limited to three inquiries:

> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
>
> [Allstars, 234 N.J. at 157 (quoting In re Stallworth, 208 N.J. 182, 194 (2011)).]

"When an agency's decision meets those criteria, then a court owes substantial deference to the agency's expertise and superior knowledge of a particular field." In re Herrmann, 192 N.J. 19, 28 (2007); see also In re Request to Modify Prison Sentences, 242 N.J. 357, 390 (2020) ("Wide discretion is afforded to administrative decisions because of an agency's specialized knowledge.").

A.

We first address Boonton's contention that the Commission erroneously granted S.J. back pay for a period of time when he did not hold an active PTC license. Boonton argues the back pay award was not based upon substantial

credible evidence in the record. Boonton also maintains the PTC suspended S.J.'s police license on May 21, 2024, rendering him ineligible to serve and be paid as a law enforcement officer under N.J.S.A. 52:17B-67.1, and the Commission "exalt[ed] form over substance."

The Act governs the licensure of law enforcement officers and authorizes the Commission to implement a statewide licensure system. N.J.S.A. 52:17B-71a. The Act explicitly requires the Commission to revoke a police officer's license if the officer has been convicted of a crime. N.J.S.A. 52:17B-71e(e).[1] The Commission's regulations, adopted pursuant to the Act, similarly state that "[p]roof of a conviction . . . shall result in the mandatory . . . revocation of licensure." N.J.A.C. 13:1-12.1(g). This mandatory revocation requirement supports the legislative goal of ensuring that police officers uphold the public trust by meeting high standards of conduct and professionalism. N.J.S.A. 52:17B-66; see also In re Disciplinary Procs. of Phillips, 117 N.J. 567, 576 (1990) (quoting Township of Moorestown v. Armstrong, 89 N.J. Super. 560, 566 (App. Div. 1965)) (recognizing that a police officer is a "special kind of

---

[1] N.J.S.A. 52:17B-71e(e) requires license revocation if an officer has been convicted of any offense listed in N.J.S.A. 52:17B-71b(a)(13)(a)-(c). That list includes any "crime in this State." N.J.S.A. 52:17B-71b(a)(13)(a).

A-2333-24

public employee" subject to a high standard of conduct because they "represent[] law and order to the citizenry").

As we have noted, the Law Division dismissed the criminal charges, and the OPIA ultimately decided not to pursue criminal prosecution against S.J. The uncontroverted record shows S.J. was never terminated by Boonton and remains an employee of the Boonton Police Department. Boonton's contention that it should not be ordered to pay S.J. back pay because his PTC license was suspended lacks merit because the criminal charges against S.J. were dismissed and expunged in the Law Division, and the OPIA declined to criminally prosecute him. Accordingly, the basis for the suspension without pay ended.

S.J. was never convicted within the meaning of the Act. See, e.g., State v. Compton, 28 N.J. Super. 45, 48 (App. Div. 1953) ("A conviction ensues whether one pleads guilty to the charge or is found guilty by the court or a jury as the result of a trial on the merits."); see also Schireson v. State Bd. of Med. Exam'rs, 130 N.J.L. 570, 573 (E. & A. 1943) ("A conviction in ordinary legal language consists of a plea of 'guilty' or verdict of guilty.").

Given this State's jurisprudence consistently interpreting "conviction" to mean a guilty plea or judgment of conviction, which did not occur here, the Commission did not act in an arbitrary, capricious, or unreasonable fashion by

12

concluding it was "unpersuaded" by Boonton's argument on the temporary suspension of S.J.'s PTC license. Moreover, the Commission held Boonton "was not strictly being ordered to reinstate [S.J.] to active law enforcement duties." The Commission's interim decision is based upon substantial credible evidence in the record and does not violate any express or implied legislative policies. Therefore, we discern no basis to intervene.

B.

We reject Boonton's argument that the Commission's back pay award was not based upon or contrary to substantial credible evidence in the record. The Commission found Boonton was required to "promptly" serve a PDNA on S.J. setting forth any administrative charges following the OPIA's decision not to pursue criminal charges against him but had not yet done so.

In its October 16, 2024 decision, the Commission held S.J. was entitled to back pay due to Boonton's "undue delay" in pursuing disciplinary charges against him or reinstate him. At that time, the matter had been pending for two years. Moreover, we note this matter has now been pending for almost four years.

The Commission acted within its discretion in awarding back pay. As a civil service employee, S.J. had the right to be apprised of the reason for his

suspension without pay, be advised of the charges, supported by the evidence, and given an opportunity to respond. N.J.A.C. 4A:2-2.5(b). Moreover, an appointing authority, such as Boonton, cannot extend a suspension beyond the disposition of a criminal complaint under N.J.A.C. 4A:2-2.7(a)(2), and must issue another PNDA identifying the remaining disciplinary charges upon disposition of the criminal charges. See N.J.A.C. 4A:2-2.7(b)(1).

Here, Boonton failed to issue another PNDA identifying the remaining disciplinary charges after S.J.'s criminal charges were dismissed. Therefore, the Commission's decision to award back pay was proper because Boonton could not continue to suspend S.J. without issuing a separate PNDA specifying the remaining charges.

In summary, we see no reason to disturb the Commission's decisions because its factual findings were supported by the credible evidence in the record and the law. Therefore, we affirm the Commission's October 16, 2024 decision granting interim relief and its March 19, 2025 decision denying Boonton's motion for reconsideration and granting S.J.'s cross-motion for reconsideration.

Affirmed and remanded. The stay is vacated. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division

14